COMMISSIONERS OF HAMPDEN COUNTY *vs*. TOWN OF AGAWAM.

No. 97-P-0814.

Hampden. June 11, 1998. - September 18, 1998.

Present: BROWN, GREENBERG, & LAURENCE, JJ.

*Practice, Civil,* Parties, Standing. *Constitutional Law,* Constitutional challenge by government agency. *County,* Commissioners. *Agawam.*

The commissioners of Hampden County, being a governmental entity, lacked standing to bring an action challenging the constitutionality of a State statute directing the commissioners to convey certain parcels of land to the town of Agawam. [483-485]

CIVIL ACTION commenced in the Superior Court Department on February 1, 1995.

The case was heard by *Francis X. Spina,* J., on motions for summary judgment.

The case was submitted on briefs.

*Thomas S. Locke* for the defendant.

*Timothy J. Howes & William K. Danaher, Jr.,* for the plaintiffs.

GREENBERG, J. On July 14, 1988, the effective date of St. 1988, c. 119, the Legislature "authorized and directed" the plaintiff county commissioners "to convey to the city known as the town of Agawam . . . five described parcels of land, presently used for agricultural and environmental purposes." For six years the commissioners failed to execute a deed as contemplated by the statute. Nor did the town demand a conveyance until January 3, 1995, just before the commissioners brought this action. The commissioners sought declaratory and injunctive relief to enjoin enforcement of the statute on the grounds

that the legislation constitutes an unlawful taking of land and violates art. 10 of the Massachusetts Declaration of Rights and art. 49 of the Articles of Amendment to the Massachusetts Constitution, as amended by art. 97 of the Amendments.[1]

In essence, the commissioners claim that the parcels at issue were held for proprietary purposes rather than public ones, and that, therefore, the Legislature became legally obligated to pay for the land taken. The town counterclaimed, essentially seeking an order that the commissioners comply with the statute. Cross motions for summary judgment were filed by both parties. After a hearing, a judge of the Superior Court granted the commissioners' motion for summary judgment, denied the town's motion, and entered judgment for the commissioners. The town appeals.

The purposes for which the land was used greatly varied through the years. Although the materials which the town furnished in support of its motion for summary judgment were less informative than one might have wished, they provided an acceptable basis to conclude that a genuine factual dispute existed as to the nature of the land use. The judge thought otherwise and found that there was "scant" evidence to support that position. According to the deposition of the superintendent employed by the commissioners, the land consisted of several acres (the judge found the total to be about seventy-eight), some of which had been used to grow vegetables for the county jail. Other open areas were used for storage of the county's equipment. Some of the property was being used for private farming, but most remained open and uncultivated space.[2]

For their part, the commissioners filed nothing — and the

---

[1]Article 10, in pertinent part, states that "[e]ach individual of the society has a right to be protected by it in the enjoyment of his life, liberty, and property, according to standing laws . . . , but no part of the property of any individual can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people." Article 49, as amended, states in pertinent part that "[t]he general court shall have the power to provide for the taking, *upon payment of just compensation* therefor, or for the acquisition by purchase or otherwise, of lands and easements or such other interests therein as may be deemed necessary to accomplish these [environmental] purposes" (emphasis supplied).

[2]While there was evidence that the county charged a fee for private farming licenses for approximately twelve acres of the land, and may have leased a portion to the Commonwealth for police academy use, there also was evidence that two acres of the land had been subject to an agreement whereby the county authorized the town to develop a *town* tree nursery (presumably for

record contains nothing — setting forth facts tending to show that the land was held only for income-producing purposes. However, we need not pass on the question. In our view, the commissioners lack standing to bring the action. Therefore, we reverse the judgment of the Superior Court.

Numerous cases involving a variety of political bodies and officials as plaintiffs have held that governmental entities lack standing and "may not challenge the constitutionality of State statutes." *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 610 (1983). See generally *Boston* v. *Board of Educ.*, 392 Mass. 788, 793 n.6 (1984); *Receiver of the Boston Hous. Authy.* v. *Commissioner of Labor & Indus.*, 396 Mass. 50, 58 (1985); *Clean Harbors, Inc.* v. *Board of Health of Braintree*, 415 Mass. 876, 878-879 (1993). See also Cella, Administrative Law and Practice § 1685 (1986). The decisional law rests on the proposition that constitutional protections belong to "persons," including private corporations, who are generally considered independent of the Commonwealth. Constitutional rights invoked by citizens as "the people" may not be infringed upon by the government. The word used to describe those entitled to protection is "people" (Declaration of Rights, art. 1, art. 49 of the Amendments, as amended). The commissioners, as elected officials rather than individuals, are not among those persons who possess the rights.

"Counties are organized by the General Court for the convenient administration of some parts of government." Randall and Franklin, Municipal Law § 57, at 87 (4th ed. 1993). They exist to carry out public purposes. Cf. *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 336 Mass. 651, 656 (1958). The purposes to which county government extends have been limited by the Legislature. See G. L. c. 34A, §§ 1-21. There is no question that the commissioners' powers are subject to modification according to legislative judgment because the counties exist at the

public, rather than private, use) and the specifications by which the county put the land out to bid provided that "[t]he purpose of this bid is to allow agricultural products to be grown on county land and to preserve the open space accordingly." There was other evidence that much of the land in question was used as open space for environmental purposes (which also might be inferred from the Legislature's assertion in the statute itself) and that at least a portion consisted of wetlands.

will of the Legislature.[3] *County of Barnstable* v. *Commonwealth*, 410 Mass. 326, 335 (1991). For the very reason that a governmental entity owes its existence to the legislature and may not assert constitutional guaranties of due process, the commissioners may not pursue this action.

The commissioners make the argument that, by its terms, St. 1988, c. 119, recognizes that no governmental function has been connected to the five parcels. Therefore, their argument goes, their complaint is brought "not in [the county's] sovereign capacity but rather [they are] engaging in commercial and business transactions such as other persons, natural or artificial, are accustomed to conduct." The commissioners liken themselves to consumers who challenge a legislative command to convey private property without just compensation. No appellate decision supporting this theory has been called to our attention, nor have we been able to find one. As *Spence* v. *Boston Edison Co.*, 390 Mass. at 610, makes clear, "[it] is one thing to allow governmental agencies the protections of a private consumer where the parties are both acting in a private capacity and where there is absolutely no 'public aspect' to the transaction. It is quite another, however, to permit an agency created by statutory authority to raise constitutional challenges to procedures developed by legislative authority." Here, as in *Spence*, the commissioners raise a constitutional challenge to a legislative judgment that was undertaken in the interest of the public. We may assume that the Legislature considered the competing concerns of the parties before enacting the statute. To reiterate, governmental entities, such as the commissioners, may not challenge the constitutionality of State statutes even though the impact of the same may diminish or abrogate property rights.

This is precisely the kind of limitation that was imposed by the Supreme Judicial Court in *Trustees of Worcester State Hospital* v. *The Governor*, 395 Mass. 377, 380-381 (1985). In that case, the trustees of Worcester State Hospital, as a governmental entity separate from the Department of Mental Health, claimed that they had standing to challenge the

[3]By St. 1997, c. 48, § 1, the Legislature abolished Middlesex County and transferred its functions to the Commonwealth. Worcester and Hampden counties were also abolished and functions were transferred as of July 1, 1998, or such earlier date thirty days after the commissioner of revenue certified in writing that the county had failed to make a required payment on an outstanding note or bond.

constitutionality of St. 1980, c. 579, § 10, which declared the State hospital land surplus and thereafter, pursuant to St. 1983, c. 317, § 1, authorized a transfer of the land to Worcester Business Development Corporation, a nonprofit corporation created by the legislature in 1965 to promote expansion of business and employment opportunities in Worcester. See St. 1965, c. 600, § 4. The gravamen of the trustees' claim was that the statutory taking of hospital land without a formal order as required by G. L. c. 79 and without compensation, violated the State Constitution. Recognizing (as *Spence* v. *Boston Edison, supra,* held) that the trustees' claim rested on the challenged constitutionality of the statutes authorizing those actions, the court held that the trustees lacked standing to bring the action.

The judgment is reversed and a new judgment is to be entered declaring that the plaintiff commissioners lack standing to pursue this action.

*So ordered.*