TALBERT TRADING COMPANY *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION.

No. 92-P-1831.

Worcester. January 10, 1994. - July 22, 1994.

Present: KASS, PORADA, & GREENBERG, JJ.

*Anti-Discrimination Law*, Employee, Handicap. *Employment*, Discrimina-
tion, Termination. *Handicapped Persons. Damages*, Under anti-dis-
crimination law, Emotional distress, Loss of earning capacity.

On the record of a handicap discrimination case before it, the Massachu-
setts Commission Against Discrimination properly concluded that an
employee's heart condition qualified him under G. L. c. 151B, § 1 (17),
as a handicapped person, protected by the statute from discharge by his
employer solely on account of his heart condition. [59-61]
Ample evidence in the record of a handicap discrimination proceeding sup-
ported the finding of the Massachusetts Commission Against Discrimi-
nation that an employee with a known heart condition was perceived by
his employer as handicapped. [61]
On the record of a handicap discrimination case before the Massachusetts
Commission Against Discrimination, in which the complainant estab-
lished a prima facie case that he was fired from his employment be-
cause of his handicap (a heart condition), the commission was war-
ranted in concluding that the employer's articulated reasons for the
discharge were a pretext and that, but for his handicap, the employee
would not have been discharged. [62-63]
The record of a handicap discrimination claim before the Massachusetts
Commission Against Discrimination supported the commission's award
of damages for emotional distress [64-65], lost wages [65], and lost
potential pension benefits [65].

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 10, 1991.

The case was heard by *John C. Cratsley*, J.

*Richard T. Tucker* for the plaintiff.

*Eugenia M. Guastaferri* for the defendant.

GREENBERG, J. From November, 1979, until his dismissal
in March, 1985, Arthur Caddell (the employee) was em-

ployed by Talbert Trading Company (the employer). On Friday, March 22, 1985, the employee experienced chest pains while at work. As he suffered from a preexisting heart condition, he became apprehensive and consulted with his cardiologist during the ensuing weekend. He was admitted to the hospital for observation on Sunday, March 24, 1985. Upon his return to work on the following Friday, he learned that, earlier in the week, a decision had been made by the employer to terminate his employment.

On April 1, 1985, the employee filed a complaint with the Massachusetts Commission Against Discrimination (the commission) alleging that the employer had discriminated against him on the basis of a "handicap," in violation of G. L. c. 151B, § 4(16).[1] After an investigation, the commission found probable cause to credit the employee's allegations, and a hearing was held before a hearing commissioner. The hearing commissioner found that in terminating the employee the employer had discriminated against the employee on the basis of his heart condition, which the commissioner found qualified as a handicap. He also determined that, by not permitting him a four-day absence, the employer did not reasonably accommodate the employee's handicap. The employee was awarded a total of $18,450.40 in damages. That amount included $10,000 for emotional distress resulting from the discharge, $5,000 in back pay, and $3,450.40 in lost pension benefits, plus interest at the statutory rate of twelve percent per year.

The employer appealed to the full commission, which affirmed the decision of the hearing commissioner, concluding that his decision was supported by substantial evidence and was a correct application of the law, and to the Superior Court, see G. L. c. 30A, § 14, arguing that the decision was

---

[1]For an historical perspective on Massachusetts protections against handicapped discrimination, see Note, Employment Discrimination Against the Handicapped: An Analysis of Statutory and Constitutional Protections in Massachusetts, 21 New Eng. L. Rev. 305 (1986). The employee's complaint also alleged discrimination based upon race. As to the race discrimination claim, the hearing commissioner found that there was no probable cause.

not supported by substantial evidence.[2] The judge affirmed the commission's decision. From the ensuing judgment, incorporating the commission's order, the employer appeals.

We summarize the facts as they were found by the hearing commissioner. For six years, the employee, who was fifty-one years of age at the time of his discharge, was employed as a press operator in the baling department by the employer, an exporter of second-hand clothing to third-world countries. As a baler, the employee packed clothing into large (five to seven hundred pounds) bundles. At the time of his hiring, he had disclosed that he suffered from a heart condition. During the entire time he was employed, however, that condition never affected his ability to do his job. His attendance at work was exemplary.

In March of 1985, there were about 150 persons employed in the employer's Worcester facility. On an annual basis, the employer experienced a 300% turnover rate of employees. To avoid disruption of the workplace because of this circumstance, and given the history of employees leaving the company without warning, the employer posted a notice above the company's time clock that stated: "*NOTICE TO ALL EMPLOYEES* IF FOR SOME LEGITIMATE REASON, YOU ARE UNABLE TO COME TO WORK, WE EXPECT YOU TO CALL AND LET US KNOW — PROMPTLY IN THE MORNING." Prospective employees were also told, at the time of hiring, that they were required to call the company on any day when illness prevented attendance at work.

We return to the employee's case. When he experienced chest pains on Friday morning of March 22, this was not a

---

[2]General Laws c. 151B, § 6, incorporates the standard set forth in G. L. c. 30A as the standard for review of commission decisions. That standard requires that the reviewing court defer to the facts found by the commission where there is substantial evidence to support the findings and where there is no error of law. *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 132-133 (1976). *Springfield Bd. of Police Commrs.* v. *Massachusetts Commn. Against Discrimination*, 375 Mass. 782 (1978). *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 224 (1978).

novel experience; he continued to operate his baling press until day's end. On Monday, March 25, the employee's ex-wife, who was also employed by the company, called his supervisor, and informed him that the employee had been admitted the day before to the hospital for observation. The supervisor was not left with the impression that the employee might be out for an extended period of time, or that the employee actually had suffered a heart attack. He told the employee's wife to "keep [him] informed of the situation."

On the third day of the employee's absence from work, Wednesday, March 27, a decision was made by the employer to replace him, purportedly because he had violated company policy by not making a daily telephone report. Someone in the higher echelon of the company (not his supervisor) decided to replace him in the event he failed to return to work the following day. At trial, the employer claimed (without much information to substantiate the claim) that the employee's position had to be filled immediately because the absence of a baler would disrupt its entire operation. As it turned out, the employee showed up for work on Friday, March 29, ready to resume work without any restrictions, but he was told that he no longer had a job.

1. *Application of G. L. c. 151B, § 4(16).* General Laws c. 151B, § 4(16), as inserted by St. 1983, c. 533, § 4, provides in pertinent part: "It shall be an unlawful practice . . . [f]or any employer . . . to dismiss from employment or refuse to . . . rehire . . . or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation . . . would impose an undue hardship to the employer's business." To prove a case of handicap discrimination under the statute, the employee has the burden of persuading the fact finder that the employee (1) is a handicapped person; (2) is otherwise "capable of performing the essential functions of the position"; and (3) is being excluded from the position solely by reason of the handicap.

*Cox v. New England Tel. & Tel. Co.*, 414 Mass. 375, 383 (1993). *Conway v. Boston Edison Co.*, 745 F. Supp. 773, 781-782 (D. Mass. 1990).

a. *Heart disease as handicap.* Although the employer does not raise it, there is an initial hurdle for the employee: to our knowledge, no Massachusetts court has passed on the issue whether a person with heart disease qualifies for the special protections of G. L. c. 151B, § 4(16).

General Laws c. 151B, § 4(16), is patterned after the Federal Rehabilitation Act of 1973, 29 U.S.C. § 791 (1988). Numerous Federal decisions that have construed the equivalent Federal law have held that persons with heart conditions similar to the employee's in this case are regarded as handicapped. See *Bey v. Bolger*, 540 F. Supp. 910, 927 (E.D. Pa. 1982); *Bento v. I.T.O. Corp. of R.I.*, 599 F. Supp. 731, 741 (D. R.I. 1984); *Johnson v. Sullivan*, 764 F. Supp. 1053, 1065 (D. Md. 1991). The United States Department of Health and Human Services includes heart disease among those conditions covered by the Rehabilitation Act. See *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 280 n.5 (1987).

General Laws c. 151B, § 1(17), as inserted by St. 1983, c. 533, § 2, defines the term "handicapped person" as "any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such impairment, or is regarded as having such impairment." Guidelines promulgated by the commission in 1986 "explain the term [handicapped person] to include, for example, . . . individuals who are obese or have high blood pressure and thus may be 'regarded as having an impairment' that the employer believes may drive up insurance rates." Heins, Massachusetts Civil Rights Law, 76 Mass. L. Rev. 26, 30 (1991).

Although the hearing commissioner did not discuss in what manner the employee's heart disease "substantially limits one or more [of his] major life activities," the commission could, in the exercise of its administrative functions, promulgate, as it did, guidelines that make such impairment a pre-

sumption in the case of a person who suffers from heart disease. Under the circumstances contained in this record, the commission properly concluded that the employee's heart condition qualified him under G. L. c. 151B, § 1(17), as a handicapped person.[3] We conclude that persons suffering from heart disease or other cardiac conditions known to their employers at the time of hiring and who are otherwise able to perform their work, are protected by the statute from discharge solely on account of their heart condition.

b. *Employer's perception of handicap.* The employer challenges the finding that the employee was perceived or regarded by the employer to be handicapped, which finding, it argues, "was seized upon by the Superior Court [judge] to base his finding that [the employee] had established a prima facie case." While the record in this case does not indicate that the employee suffered limitations of any major life activities other than the one incident which led to his firing, there was ample evidence to suggest that he had a known history of a heart condition and that he was regarded by his employer as someone with a heart condition at the time of the hiring. Testimony that he suffered a heart condition since 1969, was under a doctor's care, took medication for his condition, and submitted a note from his doctor to his employer advising of his heart trouble was uncontested at the hearing before the hearing commissioner. The conclusion that the employee's impairment and the employer's perception of his handicap were the reasons for his termination is supported by substantial evidence.

---

[3]As would be the case with any other type of medical condition, there are limiting factors. An employer may consider the employee's disability as it may affect the safety and welfare of other employees. *Prewitt* v. *United States Postal Serv.*, 662 F.2d 292, 310 (5th Cir. 1981). It is also clear that the statute permits an employer to make a preemployment inquiry of any prospective employee concerning any handicap or physical impairment and subject an offer of employment to the results of a medical examination. With access to that type of medical information prior to hiring an employee, an employer's legitimate interest in the prospective employee's ability to meet the bona fide requirements of the work is adequately protected.

2. *Claimed failure by employee to explain absence.* The employer's principal argument is that it did not fire the employee because of his heart condition; rather, it merely filled his position when he failed to return to work without informing his supervisor about his absence in advance of each day.[4] If the employee's position were not filled, its argument goes, operations in the baling department would be disrupted.

The hearing commissioner found highly implausible the employer's assertion that the employee had abandoned his job because he failed to call in sick each day. The employee's testimony that, in the past, he had not been required to call in sick every day was not contradicted, and the written policy — the notice posted above the time clock — did not contain such a stringent requirement.

Once a complainant establishes a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for its action under the analytical framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). The employer must produce credible evidence showing a legitimate rationale for terminating the employee. *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 134-135 (1976). *McKenzie* v. *Brigham & Women's Hosp.*, 405 Mass. 432, 435 (1989). To satisfy the shifted burden of production, an employer's reason must be "clear and reasonably specific," *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 258 (1981), and supported by specific facts that would justify a judgment for the employer. *Id.* at 255 n.9.

Here, the hearing commissioner found, and we agree, that there was no evidence that the employee's brief absence jeopardized the employer's operation. Despite his heart condition, the employee's longevity and attendance at work were im-

[4]As indicated, the employer does not dispute that it hired the employee with the knowledge of his heart condition or that his supervisor was informed by his ex-wife that he was admitted to the hospital on March 24 for observation.

pressive, particularly in light of the over-all high turnover rate. Both of these factors support the hearing commissioner's finding that the employer's articulated reasons for the discharge were a pretext.

As to establishing pretext, our cases have held that employees have had to prove, first, that the reason asserted by the employer was not the true reason and, second, that the employer would not have taken the contested action "but for" the unlawful discrimination. *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 315-316 n.8 (1993). See *Brunner* v. *Stone & Webster Engr. Corp.*, 413 Mass. 698, 699 (1992). The employer's nondiscriminatory reason for the employee's discharge was belied by evidence justifying the hearing commissioner's determination that the particular reason given was not the "real reason" for the decision to discharge the employee. *Radvilas* v. *Stop & Shop, Inc.*, 18 Mass. App. Ct. 431, 439 (1984). An affirmative answer to the second question — whether but for his handicap the employee would not have been discharged — follows from the determination that the given reason for the termination was a pretext.

3. *Reasonable efforts to accommodate employee.* The first paragraph of G. L. c. 151B, § 4(16), contains a requirement that employers make reasonable efforts to accommodate the particular needs of "qualified" handicapped individuals, i.e., those who are able to perform their jobs if employers make some effort to adjust the working situation. Here, the hearing commissioner found that the employer's failure to hold the employee's job open during the four days of his absence and grant him sick leave would not have imposed any hardship upon the employer.

In certain cases, sick leave has been held a reasonable accommodation under § 401 of the Federal Rehabilitation Act, the Federal analog to G. L. c. 151B, § 4(16). See, e.g., *Kimbro* v. *Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir. 1989), cert. denied, 457 U.S. 363 (1990) (failure of employer to accommodate employee's migraine condition); *McElrath* v. *Kemp*, 714 F. Supp. 23 (D. D.C. 1989) (public employer required to grant leave without pay to allow employee

to pursue treatment for alcoholism). That principle is not implicated in the instant case. The employee did not formally request that he be permitted to use sick leave before his hospitalization or ask the company to waive its supposed "call in" requirement.[5] Upon his return to work, his condition had stabilized. Nor did the employee request that any other accommodation be made before he received his final termination notice. Consequently, while the finding that the termination of the employee amounted to illegal discrimination may stand, the question whether the employer failed to make reasonable accommodation to the employee's physical condition and, thus, violated G. L. c. 151B, § 4(16), forbidding discrimination on that score, is not raised by this case.

4. *Damages.* The employer challenges certain aspects of the commission's award of damages. First, the employer argues that the award of damages for emotional distress was improper because there was no expert testimony offered to substantiate that claim. But, as the commission points out, it may award damages for emotional distress based on evidence other than expert testimony. *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination,* 400 Mass. 156, 169 (1987). *Buckley Nursing Home* v. *Massachusetts Commn. Against Discrimination,* 20 Mass. App. Ct. 172, 182 (1985) ("the standards governing an award of damages for emotional distress in proceedings under G. L. c. 151B are not so stringent as those applicable to actions of tort for the intentional infliction of emotional distress"). See also *Bournewood Hosp., Inc.* v. *Massachusetts Commn. Against Discrimination,* 371 Mass. 303, 317 (1976) (a mere finding of retaliation permits an inference of emotional distress). "It necessarily follows that in c. 151B cases an award of emotional distress damages can be sustained even in the absence of physical injury or psychiatric consultation." *Buck-*

---

[5]One State court decision could be read to hold that an employee's failure to request an accommodation — as occurred in this case — does not absolve the employer of its obligation reasonably to accommodate its employee's disabilities. *Dean* v. *Metropolitan Seattle,* 104 Wash. 2d 627, 638-639 (1985).

*ley Nursing Home* v. *Massachusetts Commn. Against Discrimination*, 20 Mass. App. Ct. at 182.

The hearing commissioner's finding that the employee suffered emotional trauma as the direct result of losing his job was supported by substantial evidence in the form of compelling testimony by the employee. The employee testified that he became depressed and disoriented and had physical symptoms never experienced before. He also indicated that he sought counselling as a result of his "nervous condition." The employer did not refute the employee's stated reasons as to the difficulties he underwent trying to return to work. Moreover, there was support for the finding that the employee was so affected by his termination as to render him emotionally and physically incapable of seeking other employment.

Based on evidence in the record, the hearing commissioner determined that the employee had received worker's compensation benefits, and also that he would have continued to work for the employer but for his unlawful termination and would have earned $20,000 as of the date of the hearing. This represented a loss to the employee. The hearing commissioner deducted from lost earnings the amount of worker's compensation the employee had received.

The employer also complains that potential pension benefits were factored into the damage calculation. We agree with the hearing commissioner and the Superior Court judge that the employee is entitled to those damages: they represent a tangible loss to him and a benefit that would have inured to him but for the unlawful termination by the employer.

Based upon our review of the entire record, we conclude that the hearing commissioner's findings and decision, as approved by the full commission and affirmed by the Superior Court, were supported by substantial evidence and that there was no error of law.

*Judgment affirmed.*