MARY E. RITCHIE vs. DEPARTMENT OF STATE POLICE.

No. 02-P-593.

Middlesex. November 12, 2003. - March 19, 2004.

Present: DUFFLY, DREBEN, & KAFKER, JJ.

*Employment,* Discrimination, Sexual harassment, Retaliation. *Anti-Discrimination Law,* Employment, Sex. *Practice, Civil,* Judgment on the pleadings.

In an employment discrimination action brought by the plaintiff, a trooper with the Department of State Police (department), claiming that she had been subjected to a hostile work environment and retaliatory conduct in violation of G. L. c. 151B, a Superior Court judge erred in allowing the department's motion for judgment on the pleadings on the c. 151B claim, where, although there remained a substantial question whether the factual allegations (specifically, that the plaintiff's superior officer was involved in an office romance with, and showed favoritism to, an administrative assistant), even broadly construed, were enough to establish a hostile work environment claim within the meaning of G. L. c. 151B, § 1(18) [660-663], the allegations that the superior officer had engaged in adverse employment actions against the plaintiff after she complained of the situation were sufficient to establish a claim of retaliation in violation of G. L. c. 151B, § 4(4) [663-666].

CIVIL ACTION commenced in the Superior Court Department on October 5, 2000.

The case was heard by *Wendie I. Gershengorn,* J., on a motion for judgment on the pleadings, and entry of separate and final judgment was ordered by *Patrick F. Brady,* J.

*Scott W. Lang (Jennifer L. Davis* with him) for the plaintiff.

*Rosemary Connolly,* Assistant Attorney General, for the defendant.

KAFKER, J. Disturbed by an apparent office romance between her superior officer and his administrative assistant and by the favors that accompanied the relationship, the plaintiff, Mary

Ritchie, a trooper with the Department of State Police (department), objected, first informally and then formally. After learning about the plaintiff's objection, her superior officer, Lieutenant Richard Lauria, criticized her performance, lowered her evaluations, and threatened her with transfer.

In count one of her nine-count complaint, the plaintiff alleges that she was subjected to a sexually hostile work environment and to retaliatory conduct by the department in violation of G. L. c. 151B.[1] A Superior Court judge allowed the department's motion for judgment on the pleadings as to count one.[2] The judge determined that the misconduct alleged did not rise to the level of either a hostile work environment or retaliation in violation of G. L. c. 151B. Another Superior Court judge entered separate and final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), on this count, which was the sole count against the department; the plaintiff appealed. We reverse the judgment as we conclude that the factual allegations of office romance, favoritism, and reprisals alleged here are sufficient to state a G. L. c. 151B claim, at least for retaliation.

The facts alleged by the plaintiff are as follows. The plaintiff has been employed as a trooper by the department since June 13, 1988. Since July 1992, she has worked in the department's crime scene services section (CSSS). Lieutenant Richard Lauria was the superior officer from the time the plaintiff joined CSSS until November 1, 1999, when he was transferred. Joanne Nason was Lauria's assistant and a civilian employee of the department. Sergeant Deborah Rebeiro was the plaintiff's direct supervisor.

The plaintiff contends that Lauria and Nason spent time in the office kitchen together, played "footsie," held hands, gave each other shoulder massages, played romantic music in their

[1]The plaintiff also sued Lauria and Joanne Nason for violation of G. L. c. 12, §§ 11H and 11I, intentional interference with her employment relationship, defamation, and intentional infliction of emotional distress. These counts are not the subject of this appeal.

[2]Colonel John DiFava was named in the case caption, but no specific allegations against him are set forth in the complaint. Any claim against him in his official capacity is contained in the count against the department.

shared office, and departed from work together.[3] The plaintiff states that in "attempting to avoid the hostile work environment, [she] limited her contacts with Joanne Nason." She also changed her work hours to avoid being "alone in the office" with Lauria and Nason.

In August, 1998, Lauria requested that all CSSS troopers contribute a portion of their retroactive pay increases to fund a bonus for Nason and another civilian employee. After the plaintiff objected to the idea, Lauria reportedly made "disparaging remarks" about her. The record does not indicate what those remarks were. The plaintiff also alleges that Lauria "interrogated" her to determine what she told other troopers about Lauria's bonus proposal.

In December, 1998, when the plaintiff was nine months pregnant and had been removed from the call list, Lauria asked her to respond to a call. After the plaintiff refused to respond to the call due to her condition, Rebeiro instructed her to apologize to Lauria.

On July 7, 1999, the plaintiff learned that Nason told another trooper that Nason believed the plaintiff disliked her. The plaintiff then informed Rebeiro that she feared retaliation from Nason and Lauria. Two days later, on July 9, the plaintiff reported to work although she was "physically ill." The CSSS homicide liaison called for assistance with an investigation. The liaison asked the plaintiff to call other troopers who were not on duty to see if they could assist. The plaintiff was unable to find anyone willing to work and eventually went home because she was sick.

On July 12, Lauria issued the plaintiff an "Observation Report" for disobeying an order, apparently for failing to find investigative assistance on July 9. In the report, Lauria wrote "[t]his is not the first instance where I asked you to assist other CSS[S] personnel and you refused to do so. I have acquiesced

[3]The judge noted that the plaintiff provided no details of Nason and Lauria's relationship in her complaint. Rather, allegations related to the "sexual overtones" of the relationship appear in the opposition to the defendant's motion for judgment on the pleadings. The judge "in fairness to the plaintiff consider[ed] these allegations in [her] discussion." As the type of conduct, albeit not the specific details, can reasonably be inferred from the facts alleged in the complaint, we do the same.

to you in the past but this time it was a direct order to perform a lawful function while on duty. . . . Your refusing to utilize your training and expertise to assist other CSSS officers in processing this terrible crime is very disturbing to me." The report warned that "any future disobedience of a direct order" would result in the plaintiff being asked to leave the CSSS. The plaintiff alleges that the report was not issued according to department protocol: proper procedure requires that the plaintiff's direct supervisor, Sergeant Rebeiro, issue such a report.

Later that month, the plaintiff spoke with a union representative about her concern that she was subject to a hostile work environment. Subsequently, the plaintiff filed a sexual harassment complaint against Lauria and Nason with the "Harassment/ Discrimination Unit" of the department on July 27, 1999. After filing the complaint, the plaintiff received the results of her most recent evaluation.[4] Although she received no negative scores, she received lower scores than she ever previously had in some categories. The plaintiff alleges that these lower scores were causally related to her filing a complaint. The plaintiff appealed her adverse scores, which appeal was later denied.

Lauria and Nason were transferred from the CSSS in early November, 1999. A short time later, on December 6, 1999, Captain Philip A. Trapasso of the harassment/discrimination unit found that the relationship between Lauria and Nason had created a hostile work environment that constituted harassment. His summary report, which was attached as an exhibit to the complaint, stated: "[f]ollowing a thorough investigation . . . the complaint of harassment is sustained, the relationship between Det. Lt. Lauria and administrative assistant Joanne Nason, created a hostile work environment for you and others. . . . [M]isuse of the Employee Evaluation System, Observation Report has also caused you a hostile work environment. Additionally Det. Lt. Lauria has been found to have shown favoritism toward Joanne Nason through overtime, time off and reprisals against other employees of Crime Scene Services."

---

[4]According to the motion judge's decision, the plaintiff stated that the employee evaluation report was issued in August, but gave no such date in her complaint. The judge assumed that the report was issued after the formal complaint was filed. We do the same.

In his summary report, Trapasso stated that his conclusions were based on fourteen interviews, records of alphanumeric page messages, e-mail messages, attendance records, and the daily administrative journal. The summary also indicated that a "complete report" had been prepared and forwarded to the Superintendent of the department. None of these documents is included in the record appendix.[5]

The plaintiff filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) on January 3, 2000. She then removed her case to Superior Court on October 5, 2000. On April 9, 2001, the department filed a motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974), on the grounds that the plaintiff's allegations failed to state a claim of sexual harassment within the meaning of G. L. c. 151B, § 1(18), or of retaliation pursuant to G. L. c. 151B, § 4(4). The motion was allowed, after hearing, on July 30, 2001.

*Discussion.* 1. *Standard of review.* Rule 12(c) of the Massachusetts Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A defendant's rule 12(c) motion is 'actually a motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.' " *Jarosz* v. *Palmer*, 436 Mass. 526, 529 (2002), quoting from Smith & Zobel, Rules Practice § 12.16 (1974).

In reviewing the grant of a rule 12 dismissal, we examine the "complaint to determine if, viewing its allegations and inferences broadly and in the plaintiff's favor, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim' entitling her to relief." *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 415 (1988), quoting from *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). In considering the defendant's 12(c) motion, "all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false."

---

[5]The docket included in the record appendix also suggests that none of these documents was produced in discovery prior to the judgment on the pleadings.

*Minaya* v. *Massachusetts Credit Union Share Ins. Corp.*, 392 Mass. 904, 905 (1984), quoting from Wright & Miller, Federal Practice and Procedure § 1368, at 691 (1969). See *Jarosz* v. *Palmer*, 436 Mass. at 529-530; *Tanner* v. *Board of Appeals of Belmont*, 27 Mass. App. Ct. 1181, 1182 (1989); *S & H Petroleum Corp.* v. *Register of Deeds for the County of Bristol*, 46 Mass. App. Ct. 535, 536 (1999).

2. *Hostile work environment claim.* General Laws c. 151B, § 1(18), as appearing in St. 1987, c. 473, § 2, defines the hostile work environment variety of sexual harassment as "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . (*b*) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." See *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. 156, 162 (1987).[6,7] The court has defined this environment as one "pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization [that] poses a formidable barrier to the full participation of an individual in the workplace." *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 532 (2001) quoting from *College-Town, Div. of Interco, Inc.*, *supra* at 162.[8]

In the instant case, in contrast to the other Massachusetts

---

[6]The Supreme Judicial Court has emphasized that it views the interference from the perspective of a "reasonable person in the plaintiff's position." *Muzzy* v. *Cahillane Motors, Inc.*, 434 Mass. 409, 411-412 (2001), quoting from *Ramsdell* v. *Western Mass. Bus Lines, Inc.*, 415 Mass. 673, 677-678 n.3 (1993).

[7]According to the MCAD Sexual Harassment in the Workplace Guidelines (2002) (MCAD Guidelines), the complainant in a hostile environment case must prove that "a) she was subjected to conduct of a sexual nature; b) the conduct of a sexual nature was unwelcome; c) the conduct of a sexual nature had the purpose or effect of creating an intimidating, hostile, humiliating or sexually offensive work environment; and d) the conduct unreasonably interfered with complainant's work performance or altered the terms and conditions of the complainant's employment." MCAD Guidelines II.C.

[8]See *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview").

decisions involving hostile work environment claims, there were no allegations of any sexual advances, requests, or conduct directed at the plaintiff. See, e.g., *College-Town, Div. of Interco, Inc.*, *supra* at 158-159; *Cuddyer* v. *Stop & Shop Supermarket Co.*, *supra* at 523 (plaintiff subject to "verbal and physical sexual conduct" by supervisor from outset of employment). In regard to the sexual behavior, the plaintiff was a third party whose exposure was limited to observing the conduct and being questioned about her objections to the relationship and associated favoritism. Compare *Leibovitz* v. *New York City Transit Authy.*, 252 F.3d 179, 190 (2d Cir. 2001) (although "evidence of harassment directed at other co-workers can be relevant to an employee's own claim of hostile work environment," plaintiff failed to demonstrate that harassment of other women affected the terms and conditions of her employment); Lindemann & Grossman, Employment Discrimination Law 834-835 (3d ed. 1996). Also, the "sexual" conduct described — hand holding, playing "footsie" and shoulder massages — was confined to a single, consensual office romance (if such it was); there was no allegation that other supervisors were involved in similar office romances. The work unit, however, appears to be relatively small, as the plaintiff expressed concerns about being "alone" with Nason and Lauria. We also cannot determine the frequency of the conduct or the plaintiff's exposure to it from the pleadings.[9]

The alleged favoritism toward Nason raises another set of considerations.[10] That favoritism included the bonus request, overtime, time off, and "reprisals" against other employees.[11] The role that favoritism toward an office paramour plays in a hostile work environment case is not an issue that has been

[9] The timing of the sexual conduct is also unclear. Because the complaint was filed on January 3, 2000, the plaintiff must allege instances of sexual harassment on or after July 3, 1999. The defendants have, however, expressly waived timeliness arguments for the purpose of this appeal.

[10] For the purpose of analyzing this motion to dismiss, we need not consider whether favoritism would violate any employment contracts covering the plaintiff. There are no breach of contract claims involved in this appeal and the plaintiff has not provided us with any applicable agreements. But see note 1, *supra.*

[11] Some of the alleged acts of favoritism, particularly those in the nature of reprisals, may be more relevant to the retaliation claim.

explored in Massachusetts case law. Although there may be cases where the facts and circumstances of the favoritism and the office paramour's conduct rise to the level of creating a sexually hostile environment,[12] it is also true that "[a] sexual relationship between a supervisor and a co-employee could adversely affect the workplace without creating a hostile sexual environment. A supervisor could show favoritism that, although unfair and unprofessional, would not necessarily instill the workplace with oppressive sexual accentuation." *Drinkwater* v. *Union Carbide Corp.*, 904 F.2d 853, 862 (3d Cir. 1990).[13]

In the instant case, the allegations set forth in the plaintiff's complaint appear too thin to establish that she was exposed to an atmosphere so "sexually charged" that it would have interfered with her "work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." G. L. c. 151B, § 1(18)(*b*). See *Drinkwater* v. *Union Carbide Corp.*, *supra* at 862; MCAD Sexual Harassment in the Workplace Guidelines II.C (2002) (MCAD Guidelines).

---

[12]See, e.g., *Broderick* v. *Ruder*, 685 F. Supp. 1269, 1278 (D.C. 1988) (finding actionable hostile work environment where several managers harassed plaintiff "by bestowing preferential treatment upon those who submitted to their sexual advances," and treated plaintiff with a "hostile response" when she voiced displeasure). See also Equal Employment Opportunity Commission Policy Guidance on Employer Liability under Title VII for Sexual Favoritism (EEOC Notice, N 915-048, 1990) (isolated instances of favoritism toward paramour not prohibited by Title VII but widespread favoritism may constitute a hostile environment).

[13]We note that in G. L. c. 151B cases (and *Drinkwater, supra,* was not a c. 151B case) it is the sexual accentuation of the workplace itself, not the particular gender of the complainant, that is critical. As the court stated in *Melnychenko* v. *84 Lumber Co.*, 424 Mass. 285, 290 (1997), "nowhere is discrimination because of a victim's sex made an essential element of a sexual harassment claim in Massachusetts." This is because "the prohibition against sexual harassment is contained in the black letter text of G. L. c. 151B." *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. at 536. "Thus [unlike in Title VII] sexual harassment as defined in § 1(18) is by legislative direction a form of sex discrimination." *Melnychenko, supra* at 290. The distinction may be significant because in sexual favoritism cases involving office paramours, the complainant's gender "typically is irrelevant." Phillips, The Dubious Title VII Cause of Action for Sexual Favoritism, 51 Wash. & Lee L. Rev. 547, 570 (1994). In the instant case, for example, male as well as female troopers were apparently asked to give up a part of their retroactive pay increases to benefit Nason and were exposed to the conduct at issue.

These allegations are, however, buttressed by the harassment/discrimination unit's summary report attached as an exhibit to the complaint and referenced therein. The summary report was based on an extensive investigation and concluded that a hostile environment had been created. The report and the unproduced referenced materials raise concerns that, despite the sketchiness of the allegations, more support for the hostile work environment claim may be forthcoming.

Given the novel and fact-specific nature of the claim, however, there remains a substantial question whether the favoritism and office romance at the core of these allegations, even broadly construed, are enough to establish a hostile environment claim. Nonetheless, we need not resolve the hostile environment claim to determine whether the motion should have been allowed, as the plaintiff's allegations in count one are sufficient to establish a c. 151B retaliation claim, even if they were to fall short on the c. 151B hostile work environment claim. *Nader v. Citron*, 372 Mass. 96, 104-105 (1977).[14]

3. *Retaliation.* General Laws c. 151B, § 4(4), as inserted by St. 1946, c. 368, § 4(4), makes it unlawful "[f]or any person [or] employer . . . to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint. . . . '' Although the parties have ignored the provision, the Legislature, in 1989, inserted § 4(4A) in c. 151B (St. 1989, c. 722, § 14), which makes it unlawful "[f]or any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by

---

[14]As in *Nader, supra,* the theory of recovery we decline to eliminate is also fact-intensive, and its viability "may require elaboration through discovery" to evaluate properly. *Id.* at 105 ("what is an unfair act may be difficult to determine on the basis of the complaint alone"). In addition, the third-party hostile environment claim here presents a relatively novel theory of recovery, which further weighs against resolution on a rule 12(c) motion. *Capazzoli v. Holzwasser*, 397 Mass. 158, 165 (1986) (Abrams, J., concurring), quoting from 5 Wright & Miller, Federal Practice and Procedure § 1367, at 603 & n.81 (1969) ("Where, as here, a plaintiff presents novel legal claims that have been recognized by other eminent courts . . . the better practice is for the trial court to deny a motion to dismiss . . . and instead permit the parties to develop the facts so that the novel theory may be 'explored and assayed in the light of actual facts rather than a pleader's suppositions' ").

this chapter . . . ." See *Bain* v. *Springfield*, 424 Mass. 758, 765 (1997); *Pontremoli* v. *Spaulding Rehabilitation Hosp.*, 51 Mass. App. Ct. 622, 625 (2001).[15]

The plaintiff's claim of retaliation may succeed even if her underlying claim of harassment fails. See *Bain* v. *Springfield, supra* at 765; *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 121-122 (2000). The plaintiff need only "prove that [she] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination," not that the employer actually engaged in wrongful discrimination. *Abramian, supra* at 121, quoting from *Tate* v. *Department of Mental Health*, 419 Mass. 356, 364 (1995). In the instant case, we conclude that the facts alleged are sufficient to satisfy the requirement that the plaintiff "reasonably and in good faith" believed that the employer was engaged in conduct in violation of G. L. c. 151B given the office romance and the favoritism toward Nason.

To establish retaliation, the plaintiff must also show that she engaged in legally protected conduct, she suffered an adverse employment action,[16] and a causal connection existed between the protected conduct and the adverse action. *Pontremoli* v. *Spaulding Rehabilitation Hosp., supra* at 625, quoting from *Lewis* v. *Gillette Co.*, 22 F.3d 22, 24 (1st Cir. 1994) ("plaintiff must establish the basic fact that he was subjected to an adverse employment action *because* of his protected activity" [emphasis original]).

The statute specifies that filing a formal complaint of sexual harassment is protected activity. The courts and the MCAD have determined that other conduct also qualifies. See, e.g., *Abramian* v. *President & Fellows of Harvard College, supra* at 121. For example, "complaining to management or filing an internal complaint of harassment," or "meeting with co-workers to discuss how to stop sexual harassment in the workplace,"

---

[15]This express prohibition against threats is absent from Title VII. In interpreting this provision, the court has emphasized that it "may well find liability under c. 151B even if the same conduct would not be actionable under Title VII." *Bain, supra* at 765 n.4.

[16]The threat itself is the adverse action for the purpose of the § 4(4A) action. See *Bain* v. *Springfield, supra* at 765; MCAD Guidelines at 13.

Ritchie *v.* Department of State Police.

can trigger the protections of c. 151B. MCAD Guidelines IX.A. Here, the plaintiff asserts that she complained about her work environment on multiple occasions. Her first complaint, in August, 1998, related to Lauria's proposed bonus for Nason. She also complained three times in July, 1999, when she expressed concern to Rebeiro about retaliation from Lauria and Nason, when she met with a union representative about her work environment, and when she filed her formal complaint with the department. These allegations are sufficient to support a claim that the plaintiff was engaged in "protected activity" under the statute.

We also conclude that the plaintiff's allegations are sufficient to support a claim that she was the subject of adverse employment action as a consequence of her protected activity. Prohibited retaliatory actions are those that constitute a change in working conditions that "create a material disadvantage in the plaintiff's employment." *Flanagan-Uusitalo* v. *D.T. Indus., Inc.*, 190 F. Supp. 2d 105, 116 (D. Mass. 2001). See *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 663-664 (1996) (finding no prohibited retaliation where plaintiff offered no evidence of "disadvantage[] in respect to salary, grade, or other objective terms and conditions of employment"); *Bain* v. *Springfield, supra* at 766 ("subjective and intangible impressions" do not make out a case of retaliation).

Here, the plaintiff alleges that the following conduct constituted impermissible retaliation: misuse and improper issuance of an employee observation report, threat of removal from the CSSS,[17] misuse of the employee evaluation system, and "retaliation by superior officers" following her filing an internal harassment complaint. We conclude that she has sufficiently alleged adverse employment actions for the purpose of a rule 12(c) motion. See MCAD Guidelines IX.B.

Finally, the allegations and the inferences that can be drawn therefrom are sufficient to establish the plaintiff's ability to prove that some of these adverse actions were causally related

---

[17]The threat may be separately considered as a G. L. c. 151B, § 4(4A), claim. Although we note that the threat here is conditioned in the report on "any future disobedience of a direct order," the allegation suffices for the motion to dismiss.

to her protected activity. On July 7, 1999, after a year in which the plaintiff had made her opposition to the conduct and favoritism clear,[18] the plaintiff learned that Nason told another trooper that she believed the plaintiff disliked her. The plaintiff then informed her direct supervisor that she feared retaliation. Within a week, after a disputed incident, the plaintiff had been issued a written reprimand and a threatened transfer. On July 27, 1999, she filed her formal complaint, and shortly thereafter she received the lower evaluations. "Close temporal proximity between the protected activity and the adverse employment action permits an inference of the causal nexus necessary for a finding of retaliation." Cooney, Understanding and Preventing Workplace Retaliation, 88 Mass. L. Rev. 3, 13 (2003). See *Clockedile* v. *New Hampshire Dept. of Corrections*, 245 F.3d 1, 6-7 (1st Cir. 2001). Without further factual development, it is premature to dismiss the plaintiff's claim of retaliation.

For the reasons stated above, we reverse the judgment dismissing the G. L. c. 151B count against the department.

*So ordered.*

---

[18]As explained in note 9, *supra*, the defendants have, for the purpose of this motion, waived any arguments based on timeliness.