Agnes, A.J.
INTRODUCTION
Plaintiff Maty Bello (“Bello”) was an employee of the Defendant, Karl Storz Endovision, Inc. (“Karl Storz”) from 1990-2000. The second defendant, William Con-roy, was Bello’s supervisor for part of the duration of her employment. Bello brought a five-count complaint against the defendants alleging sexual harassment and discrimination against herself and others, failure to remedy sexual harassment against William Conroy, *275 and retaliation. All claims were brought under G.L.c. 15IB. The defendants bring this partial motion for summary judgment on any harassment occurring prior to August 18, 1996 as barred by the statute of limitations, and in full .on the claims of gender discrimination and retaliation. For the reasons discussed below, the defendants’ motion for partial summary judgment is ALLOWED in part and DENIED in part.
FACTUAL BACKGROUND
In March 1990 the plaintiff, Bello, began working for the defendant company, Karl Storz as an assembler in the electro-mechanical manufacturing department in California. See Defendant’s Rule 9A Statement, p. I. In 1992 Bello relocated to Charlton, Massachusetts.[2] See id. Beginning in late 1992, Bello alleges that she was continually subjected to sexual advances and touching and comments of a sexual nature by co-workers and supervisors. See Affidavit of Mary Bello, p. 4. Bello claims that she was repeatedly subjected to sexually explicit discussion. See Additional Supplemental Affidavit of Mary Beth, p. 2. Bello notes that fellow employee of Karl Storz, Earl Harris, was particularly offensive, often directing commentary directly at Bello, or inappropriately approaching and touching Bello’s person. See id. Bello claims Earl Harris harassed her almost daily from 1992 until his departure from the manufacturing department on August 8, 1996.[3] See id. at 4. Bello also states that between June and October of 1995 she listened to Earl Harris constantly harass another female employee whose work station sat close to Bello’s own work station.[4] See Supplemental Affidavit of Mary Bello, pp. 5-6. Bello complained to her supervisors and managers on numerous occasions, but says nothing was specifically done to stop the alleged harassment.[5] See generally id.
On July 24, 1996 Karl Storz held a sensitivity training seminar on sexual harassment where other women spoke about problems with sexual harassment on the manufacturing floor. See id. On August 16, 1996, Bello spoke with her superiors, but was requested not to discuss any past incidents of abuse. See Affidavit of Maiy Bello, p. 10. Bello says that sexual harassment continued to occur in the ensuing years. See generally all Affidavits of Mary Bello (reflecting plaintiffs cited examples of harassment). On August 22, 1996, Bello received her first verbal warning for poor qualify of work.[6] See id. at II. On August 23, 1996, Bello received a written warning for several of the same charges. See id. Bello received a second written warning on July 18, 1997 for poor performance and an accusation that she engaged in a sexually suggestive discussion.[7] See id. at 14. Bello maintains the harassment and retaliation continued until she left the company. See id. at 16-17.
DISCUSSION
I
Summary judgment is granted where there are no issues of material fact and when the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the moving party is entitled to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment, not bearing the burden of proof at trial, may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). A moving party can meet its burden by showing the non-moving party lacks evidence to support the non-moving party’s case. See Kourouvacilis, 410 Mass, at 711. Once the moving party meets that burden, the non-moving party must show by admissible evidence that there does exist a dispute as to material facts. Id. (citing Godbout v. Cousens, 396 Mass. 254, 261 (1985)). A non-moving party plaintiff must set forth specific facts showing the existence of an issue for trial. Id. (citing Mass.R.Civ.P. 56(e)); Wheatley v. American Telephone & Telegraph Co., 418 Mass. 394, 397 (1994).
II
A. Impact of the Statute of Limitations (Counts I, II, III, V)
Massachusetts has a three-year statute of limitations in employment discrimination cases. Mass. G.L.c. 15 IB, §9. Bello filed suit in the Superior Court on August 18, 1999. The defendants argue that Bello is timed barred from recovering from any alleged sexual harassment occurring prior to August 18, 1996. See Defendants’ Memorandum. Under the continuing violation doctrine, a plaintiff can recover for conduct outside the statute of limitations if the plaintiff demonstrates a pattern of harassment that includes conduct both within and outside the limitations period.[8] See Cuddyer v. The Stop & Shop Supermarket Co., 434 Mass. 521, 539 (2001), The plaintiff cannot employ the doctrine of continuing violation, however, “[if] the plaintiff knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve . . .” See id. Reviewing the evidence in the light most favorable to the plaintiff, the record indicates that Bello knew, or at least should have known, that her work environment was pervasively hostile and not likely to improve. See id. Based on the record, the magnitude of the alleged harassment made, or at least should have made, Bello aware that the alleged acts amounted to discrimination trig *276 gering her duty to assert her rights. See Ocean Spray Cranberries, Inc. v. Massachusetts Commission Against Discrimination, 441 Mass. 632, 643 (noting continuing violation doctrine only applies if complainant proves could not reasonably form belief that acts outside limitations period were discriminatory).
Bello states that the alleged sexual harassment occurred from August 1992 until July 2000, Bello’s entire 8-year tenure at Karl Storz’s Charlton, Massachusetts facility. See Plaintiffs Memo, p. 1. Plaintiffs own affidavits and deposition illustrate a pattern of harassment that included both touching and continuous sexually explicit comments and discussions. See generally Affidavits of Mary Bello; Deposition of Mary Bello. For example, Bello and Earl Harris worked together on the manufacturing floor for almost four years. See Deposition of Mary Bello, p. 579. Bello states that “[t]here wasn’t a day or an hour that went by that Earl did not make a sexual comment to me or . . . where other people can hear him.” See id. Bello also complains that Earl Harris constantly confronted her with a sexually graphic gesture almost three times a day between 1992-1996, and then two to three times a week after he was transferred out of the department in 1996. See id. at 583-85. Throughout her employment at Karl Storz, Bello made complaints to her supervisors about the alleged harassment on the floor. Specifically between 1992-1995, Bello states that she complained to her supervisor “at least once or twice a week, if not more.” See id. at 588. Bello also says she went to her supervisor, Bill Conroy, to complain at least 20 times after 1995. See id. at 594. Despite the complaints, Bello alleges management took no specific actions to stop the harassment. See Supplemental Affidavit of Mazy Bello, pp. 7-8. After Bello gave testimony in another discrimination case involving Karl Storz, she said two other employees threatened her life. See Affidavit of Mary Bello, p. 7. After that threat, between June 19-21, 1996, Bello says the harassment was more frequent. See id. Bello also says she “knew management was not going to do anything to protect [her].” See id. at 8. The examples of the alleged harassment are abundant throughout the record, and the above examples are just some of the indications that Bello reasonably should have known her environment was pervasively hostile. Bello does frequently state that she “never lost hope” that the situation would eventually change. See Deposition of Mary Bello, p. 653 (one example of statement of hope). The standard, however, is an objective, reasonable person standard, and the record suggests that Mary Bello knew or should have known the environment at work was hostile and unlikely to change. Summary judgment is appropriate for all harassment claims occurring prior to August 18, 1996.[9]
B. Retaliation Claims (Counts IV)
To establish a retaliation claim under G.L. chapter 151B, the plaintiff must show that: (1) the plaintiff engaged in legally protected conduct; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the conduct and the adverse action. See Ritchie v. Department of State Police, 60 Mass.App.Ct. 655, 664 (2004). Bello claims that she suffered the following adverse employment actions: (1) denial of overtime hours; (2) denial of training on new products; (3) receiving less of a gain in her yearly salary than other employees; (4) revoking her title of “lead”; (5) issuing warnings about the quality of her work; (6) “tracking her whereabouts”; and (7) “sabotaging” her work. See Plaintiffs Memo, p. 18. See Defendants’ Memo, p 14. The revocation of Bello’s “Lead” responsibilities, and the removal of that title, are time-barred as they occurred in 1992 and April of 1996 respectively. See Defendants’ Memo, p. 14. As previously established, any actions Bello brings as evidence of retaliation that occurred prior to August 18, 1996 are time-barred.
Bello did engage in protected activity. Complaining to one’s management about alleged harassment is “protected activity” within the meaning of G.L.c. 15 IB. Filing a complaint of harassment is also “protected activity.”[10] See Ritchie v. Department of State Police, 60 Mass.App.Ct. 655, 664-65 (2004). Bello must then show evidence of an adverse employment action. “Prohibited retaliatoiy actions are those that constitute a change in working conditions that create material disadvantage in the plaintiffs employment.” See id. at 665 (internal quotations omitted) (internal citations omitted). Such adverse actions are interpreted as disadvantages in salary, grade or other objective terms of employment. See id. (quoting MacCormack v. Boston Edison Co., 423 Mass. 652,663-64 (1996)). The parties do not dispute that Bello received two written warnings regarding her performance at work on August 23, 1996 and July 18, 1997. See Affidavit of Mary Bello, pp. 11-13. The disciplinary warnings did not change any of the objective terms of Bello’s employment. See Disciplinary Warnings (August 23, 1996) (July 18, 1997); see also Deposition of Mary Bello pp. 542-43 (noting no change in salary, grade or benefits resulting from verbal warning Bello was given the day before the first written warning). A disciplinary warning, with no consequence on the conditions of employment, is not an adverse employment action in and of itself.[11] See MCAD v. H.T. Berry Co., Inc., 2004 Mass.Comm.Dis-crim. LEXIS 20, *1314 (April 9,2004). Bello claims she was told after receiving the second warning, however, that she would be terminated upon receiving a third warning. See Additional Supplemental Affidavit of Mary Bello, p. 12; see also supra note 9. The actual written warnings indicate that diminished quality of work and absenteeism are the reasons Bello received the warnings. See Disciplinary Warnings (August 23, 1996) (July 18, 1997). Whether or not there is in fact a connection between Bello’s harassment complaints and the receipt of the written warnings is a factual issue. Also, Bello’s claims that Karl Storz failed to train *277 her, gave her lower percentage raise than other similarly situated employees, deprived her of overtime and sabotaged her work are contested issues of fact, based on credibility. See Affidavit of Mary Bello, pp. 10-17 (indicating acts she believed were retaliatory); see Affidavit of Joan Schilder. On the issue of retaliation, summary judgment is appropriate with regard to those alleged acts occurring prior to August 18, 1996.
ORDER
For the reasons discussed above, it is hereby ORDERED that the Defendants’ motion for partial summary judgment is ALLOWED in part and DENIED in part. The Defendants’ partial summary judgment motion is allowed as to any claim for any harassment that occurred prior to August 18, 1996 for such conduct is barred by the statute of limitations. The motion is also allowed as to any claims for retaliation alleged to have occurred prior to August 18,1996 for the same reason. The motion is denied as to any claims of harassment or any alleged retaliation occurring after August 18, 1996.

In California, Bello served in the supervisory position of “Lead” of the sub and wire assembly line. See Affidavit of Mary Bello, p. 2. Bello had the same position in Massachusetts. See id. Bello contends, however, that once she arrived in Massachusetts, the position of “Lead” was in “name only." See id Earl Harris became the “Lead” in July of 1994. See id

Bello indicates that Earl Harris continued some of his harassment tactics after his departure from the manufacturing floor. See Additional Supplemental Affidavit of Mary Bello, p. 4.

The co-worker, Leeann Williams, eventually filed a sexual harassment claim with the Massachusetts Committee Against Discrimination (MCAD), and on June 10, 1996, Karl Storz began a limited investigation of Williams’s complaint. See Supplemental Affidavit of Mary Bello, p. 8. Bello served as a witness. See id. at 9. On June 13, 1996, Bello claims that two fellow Karl Storz employees threatened to kill her if she told investigators anything incriminating that implicated them. See id at 10.

Bello says that between June 19-21, 1996, after the alleged death threat, she again complained to her supervisor and nothing was done to protect her from the harassment. See Affidavit of Mary Bello, p. 8.

Bello alleges she received the warning because other company employees interfered with the work products at her station, and that she had brought to management’s attention that some of the units produced were coming to her already in faulty condition. See Affidavit of Mary Bello, p. 10. Bello also says she was faulted for absenteeism due to long bathroom breaks required because of a health problem. See id

Bello maintains that her poor performance warning was based on ribbon cables she was working on following the step-by-step procedure she used in the past. See Affidavit of Mary Bello, p. 13. Bello says that the same ribbon cables had actually passed quality assurance. See id Bello says that the conversation she engaged in was taken out of context and was not sexually explicit or suggestive in nature. See id. at 14-15.

“For the continuing violation doctrine to apply, a complainant must ordinarily prove that: (1) at least one discriminatory act occurred within . .. the limitations period; (2) the alleged timely discriminatory acts have a substantial relationship to the alleged untimely discriminatory acts . .. [and] (3) earlier violations outside . . . [the] limitations period did not trigger [the plaintiffs] ‘awareness and duty’ to assert his rights . . . could not have formed a reasonable belief at the time the employment actions occurred that they were discriminatory." See Ocean Spray Cranberries, Inc. v Massachusetts Commission Against Discrimination, 441 Mass. 632, 643 (2004) (internal quotations omitted).

Plaintiff also brought a claim for gender discrimination. The first claim regarding being “passed over” as the “lead” is barred by the statute of limitations. See Defendants’ Memo (citing two actions for which Bello claims gender discrimination). Regarding Bello’s claim that she was told that she had to “time” her bathroom breaks and tell her supervisor each time she used the bathroom, Bello admits that the act was not gender-motivated. See Deposition of Mary Bello, pp. 424-43 (acknowledging defendants probably thought she was abusing privilege).

Plaintiff filed two formal sexual harassment complaints with the MCAD in December 1996 and November 1997. See Plaintffs Memo, p. 17.

The plaintiff argues that if a warning is a threat of termination or transfer conditioned on future wrongdoing, that warning is an adverse employment action. See Plaintiff’s Memo (citing Ritchie v. Department of State Police, 60 App.Ct. 655, 664-66 (2004)). The warnings themselves do not contain a threat. The warnings contain the language that further disciplinary action would result that could include termination, and only the second warning contains the language regarding potential termination. See Disciplinary Warnings (August 23, 1996) (July 18, 1997). Whether or not Bello’s supervisor threatened her with termination when giving her the warnings is a factual dispute.