BOSTON WATER & SEWER COMMISSION *VS.* COMMONWEALTH
& another.[1]

No. 04-P-534.

Suffolk. March 11, 2005. - September 28, 2005.

Present: GELINAS, BROWN, & DUFFLY, JJ.

*Constitutional Law,* Constitutional challenge by government agency, Taking of
property. *Boston Water and Sewer Commission. University of
Massachusetts. Statute,* Construction.

The Boston Water and Sewer Commission (commission), a governmental entity,
lacked standing to bring an action against the University of Massachusetts
(university) challenging special legislation providing for the taking, by
eminent domain, of certain land owned by the commission for the university,
where all the counts of the complaint contained either explicit or implicit
constitutional challenges, and where the commission did not generally, and
was not in this instance, engaging in a purely commercial or business transac-
tion [614-616, 617-618]; further, the commission failed to demonstrate that
the taking of the land in question was void ab initio due to the failure to rec-
ord the taking as required by G. L. c. 79, § 3 [616-617].

CIVIL ACTION commenced in the Superior Court Department on
January 15, 2003.

The case was heard by *Christine M. McEvoy,* J., on a motion
for judgment on the pleadings.

*James D. Masterman* (*Henry C. Luthin* with him) for the
plaintiff.

*John E. Bowen,* Assistant Attorney General (*Lawrence T.
Bench* with him) for the defendants.

GELINAS, J. In this appeal we consider whether the doctrine
set out in *Spence* v. *Boston Edison Co.,* 390 Mass. 604, 610
(1983) — that agencies created by the Commonwealth may not
challenge the constitutionality of the acts of another of the
Commonwealth's agencies — is applicable to the claims of the

[1]University of Massachusetts.

Boston Water and Sewer Commission (Commission) against the University of Massachusetts (University), or whether any of the claims fall within a proprietary exception and are appropriately subject to the plaintiff's challenges. Pursuant to Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974), a Superior Court judge dismissed the Commission's complaint against the University. The Commission appeals.

The facts are undisputed. Pursuant to St. 1969, c. 898, the Legislature authorized the creation of the Boston campus of the University. The act enabled the University to buy or to take land on Columbia Point in Dorchester by eminent domain, but excluded a portion of land known as "the Calf Pasture."[2] At the time of the 1969 enactment, the Calf Pasture, a nine-acre parcel of land, was under the control of Boston's public works department and had been employed for sewer-related uses, including sewer pumping stations and sewerage disposal facilities, since 1883. The 1969 act also granted the University what was tantamount to a right of first refusal on the disposition of the Calf Pasture in the event that the area was no longer to be used for sewer operations. Pursuant to St. 1977, c. 436, the Commonwealth created the Commission. The enabling legislation provided, among other matters, that the Commission be the successor in interest and title holder of the Calf Pasture.

In January of 1999, the Commission and the University signed a memorandum of understanding (MOU) addressing the parties' mutual desire that the sewer transfer station be relocated to another place and that the Calf Pasture be transferred to the University. The MOU outlined the consideration to be paid by the University.

Several months later, the Legislature intervened, enacting special legislation, St. 1999, c. 55, § 39, which amended the 1969 act to provide for the taking of the Calf Pasture by eminent domain for the University. The 1999 act mandated that the University "fulfill all other requirements of chapter 79 of the General Laws as if it were the taking authority." St. 1999, c. 55,

---

[2]The Calf Pasture is located on the northerly side of Columbia Point in the Dorchester section of Boston. The "Calf Pasture" likely traces its name to the first Puritan settlement on Columbia Point, which used the peninsula as a grazing area for livestock.

§ 39. The act also adopted the provisions of the MOU regarding payment of the purchase price to the Commission, requiring that "the board of trustees of the University of Massachusetts . . . make the conveyance of land authorized herein under the terms and conditions contained in [the] Memorandum of Understanding between said university and said commission." *Ibid.* The MOU required the University to provide $1 million in compensation to be paid in scholarships for Boston residents; it also required the conveyance of undesignated replacement land to the Commission. Governor Swift signed the 1999 act into law on August 12, 1999; the act was made retroactive to June 30, 1999.

In 2002, in the midst of efforts by the University to secure a replacement parcel of land, the Legislature again passed special legislation regarding the Calf Pasture. The "Hart Amendment," St. 2002, c. 184, § 210, superseded the MOU and the 1999 act, and prohibited the University from conveying any University-owned replacement land on Columbia Point as part of the compensation for the Calf Pasture. The Hart Amendment also required the University to determine "other forms of compensation for the taking," in consultation with the Commission. St. 2002, c. 184, § 210.

In January, 2003, having made no progress toward determining "other forms of compensation," the Commission brought suit against the Commonwealth and the University, seeking declaratory relief regarding the validity of the taking by eminent domain or, alternatively, land damages. The Commission's complaint contains five counts: count I, seeking declaratory judgment under G. L. c. 231A, claiming that failure to record the order of taking within thirty days of the date that the 1999 act passed renders the taking void ab initio under G. L. c. 79; count II, seeking a declaratory judgment declaring both the 1999 act and the Hart Amendment unconstitutional for vagueness and indefiniteness; count III, claiming the taking to be unconstitutional for lack of due process; count IV, a claim for breach of the MOU; and count V, requesting land damages for the constitutional violations.

The Commission filed a motion for summary judgment as to counts I and II of the complaint. The Commonwealth responded

with a motion for judgment on the pleadings pursuant to Mass. R.Civ.P. 12(c), with respect to all counts, claiming that as an agency of the government, the Commission lacked standing to bring claims to enforce constitutional rights. Following a hearing, a Superior Court judge denied the Commission's motion for partial summary judgment and allowed the Commonwealth's motion. Judgment for the Commonwealth entered on all counts.

*Discussion. Standard of review.* Rule 12(c) of the Massachusetts Rules of Civil Procedure provides as follows: "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Rule 12(c) functions as a " 'motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.' *Jarosz* v. *Palmer*, 436 Mass. 526, 529 (2002), quoting from Smith & Zobel, Rules Practice § 12.16 (1974)." *Ritchie* v. *Department of State Police*, 60 Mass. App. Ct. 655, 659 (2004). "In reviewing the grant of a rule 12 dismissal, we examine the 'complaint to determine if, viewing its allegations and inferences broadly and in the plaintiff[s'] favor, "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim" entitling [them] to relief.' *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 415 (1988), quoting from *Nader* v. *Citron*, 372 Mass. 96, 98 (1977)." *Ritchie* v. *Department of State Police*, *supra* at 659. We first consider the dismissal of Counts II through V.

*The proprietary exception.* The Commission argues that the motion judge erroneously ruled that the Commission lacked standing to bring counts II through V. It claims the judge erred in failing to recognize that the Commission's actions here fall within a proprietary exception to the rule that governmental agencies cannot raise constitutional challenges and, furthermore, that not all the counts raised in the complaint contained constitutional claims.

The motion judge dismissed counts II through V, relying on *Spence* v. *Boston Edison Co.*, 390 Mass. 604 (1983). According to the *Spence* doctrine, "[a]gencies, which are creations of the State, may not challenge the constitutionality of State statutes," unless the State agency operates solely in a proprietary manner. *Spence* v. *Boston Edison Co.*, 390 Mass. at 610, citing *Newark*

*v. New Jersey*, 262 U.S. 193, 196 (1923). As a basic principle, "governmental entities do not enjoy . . . constitutional guaranties." *Spence, supra* at 608. Such constitutional rights only arise in the rare case where an agency must be considered a "person" because of the nature of its purely business or commercial transactions. In such circumstances, "the sovereign entity involved is acting not in its sovereign capacity but rather is engaging in commercial and business transactions such as other persons, natural or artificial, are accustomed to conduct." *Id*. at 609, quoting from *United States* v. *Coumantaros*, 165 F. Supp. 695, 698 (D. Md. 1958). Government agencies, created by legislative authority, may not raise constitutional challenges to procedures developed by legislative authority unless the parties are both acting in a private capacity and "there is absolutely no 'public aspect' to the transaction." *Spence, supra* at 610.

We conclude that the motion judge correctly dismissed counts II through V of the Commission's complaint under the *Spence* doctrine. All counts contain either explicit or implicit constitutional challenges, and the Commission does not generally, and was not in this instance, engaging in a purely commercial or business transaction.

The Commission is a government agency, created in 1977 by St. 1977, c. 436. The 1977 act established the Commission, "for the benefit of the people of the city of Boston," as "a body politic and corporate and political subdivision of the commonwealth" to "maintain a sound, economical and efficient water supply and distribution system and sanitary sewerage system," which is characterized by the statute as "an essential public function." St. 1977, c. 436, §§ 1, 3. Further, the Commission does not function in a purely commercial sense with respect to its financial condition or its fees for service. Although it is charged with providing services in exchange for fees, the act requires that the Commission's system be "financially self-sustaining," to "insure the continued availability of [water and sewerage systems] at fair but sufficient rates." St. 1977, c. 436, § 1. Should the Commission retain surplus fees, the excess must be used to reduce rates, or be paid to the city for "such purposes as the city may appropriate," St. 1977, c. 436, § 7(f), a clearly public mandate. The enabling legislation establishes

the Commission as a nonproprietary government agency, intended to provide essential public services.

With respect to this transaction as well, the Commission and the University are both acting in their public capacities, and there is predominantly a public aspect to their dealings, despite an MOU that resembles a private transaction. On the public side, the Legislature intervened on two separate occasions. The taking is by eminent domain, a quintessentially public function, and compensation in part is paid, not to the Commission, but for scholarships to the University.

In accordance with the principles set forth in *Spence* and its progeny, the Commission lacks standing to make the challenges attempted here. *Spence*, 390 Mass. at 610. See *Trustees of Worcester State Hosp.* v. *The Governor*, 395 Mass. 377, 380 (1985) (hospital trustees lacked standing to raise a constitutional takings claim); *Clean Harbors of Braintree, Inc.* v. *Board of Health of Braintree*, 415 Mass. 876, 878-879 (1993) (municipal board of health lacked standing to challenge a State statute); *Commissioners of Hampden County* v. *Agawam*, 45 Mass. App. Ct. 481, 484 (1998) (elected county commissioners lacked standing to challenge legislative judgment). See also *Massachusetts Bay Transp. Authy.* v. *Auditor of the Commonwealth*, 430 Mass. 783, 792 (2000) (Massachusetts Bay Transportation Authority, as a statutorily created government agency, lacked standing to challenge a State statute on constitutional grounds).

*Count I.* As to count I, the Commission claims that the taking of the Calf Pasture was void ab initio due to the Commonwealth's failure to record the taking (that is, the passage of the 1999 act) with the registry of deeds within thirty days, as required by G. L. c. 79, § 3. While the 1999 act mandates that the University fulfil all other requirements of G. L. c. 79, it also provides that "notwithstanding any . . . general or special law to the contrary, the [Calf Pasture] is hereby condemned and taken by the power of eminent domain in fee simple and title to said [parcel] is hereby vested in the commonwealth for use by the University of Massachusetts." St. 1999, c. 55, § 39. To the extent that any statutory provisions are inconsistent with the 1999 act, we conclude that the phrase "notwithstanding any . . . general or special law to the contrary" repeals the

inconsistent statute to the extent necessary to make the act effective. See *Mathewson* v. *Contributory Retirement Appeal Bd.*, 335 Mass. 610, 614 (1957). The 1999 act provides that title in the Calf Pasture "is hereby vested in the commonwealth," and that the University "shall fulfill *all other* requirements of chapter 79 of the General Laws as if it were the taking authority" (emphasis added). St. 1999, c. 55, § 39. The language of the 1999 act sufficiently covers the issue of vesting by providing that title "is hereby vested." It is clear that the Legislature intended for title to vest on the passage of the act and did not additionally require the University to comply with § 3 in order for title to vest.[3] "The general rule of construction is that where the language of the statute is plain, it must be interpreted in accordance with the usual and natural meaning of the words." *Commissioner of Rev.* v. *AMIWoodbroke, Inc.*, 418 Mass. 92, 94 (1994).

*Additional arguments.* We also conclude that the Commission cannot circumvent the *Spence* doctrine by attempting to cast count IV as a claim for breach of the terms of the MOU that does not implicate either the Massachusetts or the United States Constitution. Count II of the Commission's complaint requests that the court find the 1999 act and the Hart Amendment "so vague and indefinite that they should be declared unconstitutional and, therefore, void and without force and effect." Count IV then seeks to enforce the MOU as the controlling contract, claiming that the failures of the University to pay fair market value, to arrange the scholarships, and to secure necessary permits and approvals for a permanent transfer station constitute material breaches of the MOU, which have caused the Commission damage. In essence, the Commission seeks to invalidate the Hart Amendment on constitutional grounds, thus permitting enforcement of the MOU as a prior existing agreement. Given that the Commission lacks standing to challenge the constitutionality of the Hart Amendment, the Hart Amendment stands as the Legislature's final word on reparations, and supersedes the

---

[3]According to G. L. c. 79, § 3, title to property vests in the body politic or corporate upon the recording of an order of taking. The taking authority is required to record the order of taking within thirty days of the adoption of the order.

MOU and the 1999 act as to issues of compensation and replacement property.

At no point in its complaint or in proceedings in the trial court did the Commission seek to enforce the Hart Amendment. It is only on appeal that the Commission argues that it does not claim that the 1999 act or the Hart Amendment are illegal or inapplicable and that it is only seeking to compel the University to comply with each. This argument contradicts the plain language in counts II and IV of the complaint. We will not entertain arguments raised for the first time on appeal, and we express no opinion on the argument's potential merit. See *Child* v. *Child*, 58 Mass. App. Ct. 76, 84 (2003) (it is a general rule that an issue not raised in the trial court cannot be argued for the first time on appeal); *Bruno* v. *Board of Appeals of Wrentham*, 62 Mass. App. Ct. 527, 531-532 (2004) (notwithstanding an argument's potential merit, it cannot be raised on appeal if not raised below).

We affirm the dismissal of all counts.

*Judgment affirmed.*