Lu, John T., J.
The pro se plaintiff, Pedro Canovas (Mr. Canovas), brings this action against the defendants, Dr. Dario C. Altieri (Dr. Altieri) and University of Massachusetts Medical School (UMMS), alleging breach of contract (Count I), wrongful discharge for breach of contract (Count II), wrongful discharge for breach of the covenant of good faith and fair dealing against UMMS (Count III), retaliation against both defendants (Count IV), tortious interference with contract rights (Count V), tortious interference with prospective business or economic advantage (Count VI), promissory estoppel (Count VII), intentional infliction of emotional distress (Count VIII), and prior restraint on publication (Count IX) against Dr. Altieri. The claims arise from Mr. Canovas’s termination on August 15, 2008 as a Postdoctoral Associate in Dr. Altieri’s laboratory at UMMS. The defendants move to dismiss Mr. Canovas’s complaint for failure to state a claim upon which relief could be granted.
Mr. Canovas’s breach of contract, wrongful discharge for breach of contract, and wrongful discharge for breach of covenant of good faith and fair dealing claims against UMMS are premised upon his assertion that he entered into an employment contract for a definite term with UMMS when he accepted the terms of Dr. Altieri’s offer letter. The offer letter stated that Mr. Canovas’s salary would be $42,000 per year, and requested that he commit to the job for at least two years. He further argues that he believed he would be employed at least until January 7,2010 because UMMS filed avisa petition letter on Canovas’s behalf providing that the dates of his employment period were September 15, 2007 to January 7,2010. The defendants assert that Mr. Canovas was an employee “at will” and was subject to termination at any time without cause. See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 150 (1989), quoting Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 668 n.6 (1981) (“the general rule [is] that ‘an employment-at-will contract [can] be terminated at any time for any reason or for no reason at all’ ”) (third alteration in original).
“[Wjhether there is a contract for services for a definite period of time . . . depends upon all the attendant conditions surrounding the agreement, as well as upon its terms, when the latter are not specific and clear.” Kravetz v. Merchants Distributors, Inc., 387 Mass. 457, 460 (1982), quoting Maynard v. Royal Worcester Corset Co., 200 Mass. 1, 4 (1908). Where the terms of an agreement with respect to duration of employment are neither specific nor clear, as in this case, it is “proper... to refer not only to the contract language but also to the attendant circumstances, including the nature of the employment, ... the prior negotiation, [and] the situation of the parties.” Id., quoting Mahoney v. Hildreth & Rogers Co., 332 Mass. 496, 498 (1955). Reference in a contract to a salary payable at an annual rate is one circumstance supporting a finding that the contract provided for employment for a definite term. Id.
Mr. Canovas asserts that UMMS, through its agent, Dr. Altieri, breached his employment contract by failing to revise his annual salary, denying him an annual bonus, failing to provide him with financial assistance when he was denied unemployment benefits, and failing to publish the results of his research. Taking Mr. Canovas’s allegations as true and drawing all reasonable inferences in his favor, this court finds that he has alleged sufficient facts to suggest that he had an employment contract with UMMS for the period of three years.[2] Similarly, factual determinations are required on the issue of whether the publication of research results was an implied benefit of the contract and, if so, whether UMMS, through Dr. Altieri, interfered with the publication of Mr. Canovas’s research data in violation of the covenant of good faith and fair dealing implicit in every contract. See Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (neither party to contract may do anything that destroys or injures other party’s right to receive fruits of contract). It is inappropriate to dismiss the counts for breach of contract, wrongful discharge for breach of contract, and wrongful discharge for breach of covenant of good faith and fair dealing.
It appears that Mr. Canovas brings his retaliation claim against the defendants under G.L.c. 15 IB, §4(4).[3] *273 To establish a prima facie case for retaliation, Mr. Canovas must show: (1) that he “engaged in legally protected conduct”; (2) “that [he] suffered an adverse employment action"; and (3) that “a causal connection existed between the the protected conduct and the adverse action.” Ritchie v. Dept. of State Police, 60 Mass.App.Ct. 655, 664 (2004) (internal citation omitted). Mr. Canovas has alleged sufficient facts to suggest that Dr. Altieri’s refusal to publish his work and provide him with letters of reference may have been causally connected to Mr. Canovas’s protected conduct, i.e. filing of an internal complaint against Dr. Altieri with the Diversity and Equal Opportunity Office at UMMS. See Ritchie, 60 Mass.App.Ct. at 664-65 (stating that complaining to management, filing an internal complaint, or meeting with coworkers to resolve harassment issues qualifies as protected conduct). An individual may bring a claim against a former employer for post-employment retaliation. See Donaldson v. Akibia, No. 2003-1009 (Mass.Super.Ct. Nov. 29, 2005) (Fecteau, J.) [20 Mass. L. Rptr. 318] (denying summary judgment in action arising out of employer’s post-termination reduction of plaintiffs proposed severance after plaintiff informed employer of possibility of filing discrimination claim against employer). Mr. Canovas’s allegation that Dr. Altieri terminated him in retaliation for challenging Dr. Altieri’s scientific discoveries fail, however, as he has no arguable basis for establishing that he engaged in protected conduct. Similarly, his retaliation claim against UMMS fails, as he has not alleged that he was materially disadvantaged by UMMS’s prohibiting him from returning to campus. See Ritchie, 60 Mass.App.Ct. at 665 (“Prohibited retaliatory actions are those that constitute a change in working conditions that ‘create a material disadvantage in the plaintiffs employment’ ”) (internal citation omitted).
Mr. Canovas further argues that by refusing to revise his salary, asking him to do unnecessary experiments, not sending him to conferences, and not publishing his research results, Dr. Altieri improperly interfered with his contractual relationship with UMMS. He also asserts that Dr. Altieri tortiously interfered with his business relationship with potential employers by not providing Mr. Canovas with a reference letter and by possibly giving him bad references. “There are four elements required to establish the tort of intentional interference with contractual relations: (1) the plaintiff had a contract with a third party, (2) the defendant knowingly induced the third party to break that contact, (3) the defendant’s interference was improper in motive or means, and (4) the plaintiff was harmed by the interference.” Alba v. Sampson, 44 Mass.App.Ct. 311, 314 (1998), review denied, 427 Mass. 1104 (1998) (internal citation omitted). Actions taken by an employee’s supervisor within the scope of employment are privileged, as long as the actions are not taken with actual malice. Boothby v. Texon, Inc. 414 Mass. 468, 487 (1993). Massachusetts courts have defined actual malice or malevolence as the taking of an action “for a spiteful, malignant purpose, unrelated to the legitimate corporate interest.” Id. (internal citation and quotations omitted). Mr. Canovas’s allegations are sufficient to suggest that Dr. Altieri acted with a spiteful, malignant purpose toward him during Mr. Canovas’s employment at UMMS and after his termination. Additionally, although there is no factual support to Mr. Canovas’s allegations that Dr. Altieri provided Mr. Canovas’s potential employers with bad references, this might be resolved by a Rule 56 motion after completion of discovery. As such, Counts V and VI survive the defendants’ motion to dismiss.
Mr. Canovas also brings a promissory estoppel claim against Dr. Altieri. Promissory estoppel may arise where there is “(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.” Sullivan v. Chief Justice for Admin. and Mgmt. of the Trial Court, 448 Mass. 15, 27-28 (2006) (internal citation omitted). Mr. Canovas’s complaint states that Dr. Altieri represented to him that he was committed to having Mr. Canovas’s work published in a scientific journal, and that Mr. Canovas relied on this promise when accepting employment at UMMS because his main objective was to publish the results of his research. He has also alleged that he suffered detriment as a result of Dr. Altieri’s failure to collaborate with him in the publication of his research. The reasonableness of Canovas’s reliance on the promise to publish is an issue to be decided, possibly, at the summaiy judgment stage. Dismissal of this count is inappropriate.
Mr. Canovas further asserts that Dr. Altieri’s allegedly wrongful actions caused him severe emotional stress. ‘To sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant’s conduct was extreme and outrageous; (3) that the defendant’s conduct caused the plaintiff distress; and (4) that the plaintiff suffered severe distress.” Sena v. Commonwealth, 417 Mass. 250, 264 (1994), citing Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976). Extreme and outrageous conduct is that which is “beyond all bounds of decency and . . . utterly intolerable in a civilized community.” Id. Whether the alleged tortious conduct meets this standard may be determined as a matter of law. Id. This court finds that Dr. Altieri’s conduct as alleged in the complaint was not “utterly intolerable in a civilized community.” Agis, 371 Mass. at 145. This claim must be dismissed.
The facts alleged in the complaint do not state a claim for prior restraint on publication against Dr. Altieri. Mr. Canovas alleges that by refusing to collaborate with him on publishing the results of his research, Dr. Altieri is preventing him from communicating his scientific discoveries to the public. Under the doctrine of prior re *274 straint, “(a]ny government regulation that limits or conditions in advance the exercise of protected First Amendment activity constitutes a form of prior restraint, . . . and any such restraint comes ‘bearing a heavy presumption against its constitutional validity.’ ” See Fantasy Book Shop, Inc. v. City of Boston, 652 F.2d 1115, 1120 (1st Cir.1981), quoting Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 552-58 (1976). This doctrine is inapplicable here. Since Dr. Altieri does not exercise control over the scientific journals’ publication decisions, Mr. Canovas’s complaint fails to establish that Mr. Altieri’s alleged unwillingness to collaborate with Mr. Canovas on publishing his work amounts to censorship of Mr. Canovas’s ideas. This countwill be dismissed.
ORDER
The defendants’ motion to dismiss (paper #11) is DENIED as to Counts I, II, III, IV (against Dr. Altieri), V, VI, and VII. The motion is ALLOWED as to Counts IV (against UMMS), VIII, and IX.

 The court has not considered the affidavits of Dr. Altieri and John Roy, Compensation Manager for UMMS, that the defendants have filed in support of their opposition. Such affidavits are not appropriate in the context of a motion to dismiss.

 General Laws c. 151B, §4(4), provides that it is unlawful for “any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.”